UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CHANEL, INC.,

                           Plaintiff,                           17-cv-4565 (PKC)

       -against-                                         OPINION AND
                                                           ORDER

KRISTIN RICHARDSON, an individual,
RISCARDO TORRES, an individual, and FULL
SERVICE INK, LLC, a New York limited liability
company, individually and jointly,

                           Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

          Plaintiff Chanel, Inc. ("Chanel") asserted trademark, cybersquatting, and unfair competition claims under New York and federal law against Full Service Ink, LLC ("Full Service"), and its co-owners Riscardo Torres and Kristin Richardson, alleging that defendants' sales of counterfeit goods online infringed its marks and that defendants intentionally profited from the use of the marks in defendants' registered domain names. Discovery in this case is now closed. Chanel moves for summary judgment on all claims against defendant Torres, who is proceeding *pro se*.[1]

          For the reasons explained, Chanel's motion is granted with respect to its anti-cybersquatting consumer protection claim, and otherwise denied.

---

[1] Kristin Richardson settled with Chanel and is no longer party to this action. (Docs 81, 89.) The Court entered default judgment against defendant Full Service in November 2018. (Doc 86.)

## BACKGROUND

A. Relevant Facts

The following facts are either undisputed or described in the light most favorable to Torres as the non-movant. See, e.g., Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011).

Chanel manufactures, distributes, and sells luxury goods including handbags, backpacks, tote bags, wallets, shoes, and hats that use several trademarks owned by Chanel. (Pl.'s 56.1 ¶4; Doc 65, Def.s 56.1 Resp. ¶4; Doc 83.) The trademarks comprise the name "CHANEL" in a certain font and format, and two overlapping "C"s facing opposite directions either in bold font or in bold font with a circle surrounding the C's. (Pl.'s 56.1 ¶2; Doc 65, Def.'s 56.1 Resp. ¶2; Doc 83.) Relevant here, Chanel owns nine trademarks for its luxury goods. (Pl.'s 56.1 ¶2; Doc 65, Def.'s 56.1 Resp. ¶2; Doc 83.) Chanel's marks have been registered on the principal register of the United States Patent and Trademark Office for numerous years. (Pl.'s 56.1 ¶14; Doc 65, Def.s 56.1 Resp. ¶14; Doc 83.) The registrations are as follows: in International Class 25, Registration #s 1,241,264, 1,271,876, 1,241,265, and 4,241,822, and in International Class 18, Registration #s 0,626,035, 1,314,511, 1,347,677, 1,733,051, and 1,734,822. (Pl.'s 56.1 ¶2; Doc 65, Def.'s 56.1 Resp. ¶2; Doc 83.) Mr. Torres does not dispute that the Chanel marks "are symbols of Chanel's quality, reputation, and goodwill and have never been abandoned," or that Chanel's handbags "are among the best-selling" in the world. (Pl.'s 56.1 ¶¶5, 13; Doc 65, Def.'s 56.1 Resp. ¶¶5, 13; Doc 83.)

Mr. Torres was a 50% owner of Full Service, a company registered at 156 Beach 60th Street, Arverne, NY. (Def.'s Opp. Decl. ¶2; Doc 82.) Mr. Torres registered the domain name "chanelgraffiti.com" with no listed registration organization. (Pl.'s 56.1 ¶18; Doc 65, Def.'s 56.1

Resp. ¶18; Doc 83.) Mr. Torres registered the domain name "wholesaleprintingnyc.com" and listed as the registrant's organization Full Service. (Pl.'s 56.1 ¶50; Doc 65, Def.'s 56.1 Resp. ¶50; Doc 83.)

### B. Procedural History

Chanel commenced this action on June 16, 2017. (Doc 1.) In its Complaint, Chanel asserts four causes of action. (Id.) Count I asserts trademark counterfeiting and infringement under the Lanham Act, 15 U.S.C. § 1114; Count II asserts false designation of origin for counterfeit goods under the Lanham Act, 15 U.S.C. § 1125(a); Count III asserts cybersquatting under the Lanham Act, 15 U.S.C. § 1125(d); and Count IV asserts common-law unfair competition under New York law. (Compl. ¶¶37-65; Doc 1.) Mr. Torres did not respond to Chanel's interrogatories or request for production of documents. (Pl.'s 56.1 ¶¶63–64; Doc 65, Def.'s 56.1 Resp. ¶¶63–64; Doc 83.)

Chanel now moves for summary judgment in its favor on all four counts. (Doc 58.) Chanel submits several declarations in support of its motion along with exhibits purporting to show transactions in and online advertisements for goods containing its infringed marks, and a Local Rule 56.1 Statement. (Docs 60–65, 85.) Mr. Torres submits a response to plaintiff's 56.1 Statement and a sworn affidavit with a one page exhibit in opposition to the motion for summary judgment, both of which were prepared with the assistance of the New York Legal Assistance Group Legal Clinic for Pro Se Litigants in the Southern District of New York. (Docs 82, 83 & nn.1.)

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule

56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted).

It is the initial burden of the movant to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief, and the evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248).

"A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (internal citation omitted); see Anderson, 477 U.S. at 249-50 (stating summary judgment may be granted if the opposing evidence is "merely colorable" or "not significantly probative"). Courts review pro se pleadings liberally and interpret pro se pleadings "to raise the strongest arguments that they suggest." See, e.g., Green v. United States, 260 F.3d 78, 83 (2d Cir. 2011) (citations omitted). "This is especially true in the summary judgment context, where a pro se plaintiff's claims are

subject to a final dismissal." Bodie v. Morgenthau, 02 cv 7697 (PKC), 2006 WL 357822, at *2 (S.D.N.Y. Feb. 16, 2006); see Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment.") (citation omitted).

DISCUSSION

I. Trademark Infringement Pursuant to 15 U.S.C. §§ 1114, 1125(a) and Common Law Unfair Competition Claims

The Lanham Act provides for a trademark-infringement claim if unapproved use of a mark is likely to cause confusion as to its affiliation, sponsorship, or approval. 15 U.S.C. §§ 1114(a),[2] 1125(a)(1)(A)[3]; see Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 204 (2d Cir. 1979). "A claim of trademark infringement . . . is analyzed under [a] familiar two-prong test[.] . . . The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether [the] defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." Savin Corp. v. Savin Grp., 391 F.3d 439, 456 (2d Cir. 2004) (quoting Virgin Enters., Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003) (alterations in original)). "Although § 1114 and § 1125 differ in that the latter statute covers both registered and unregistered trademarks, the legal standard to establish liability 'is the same' under both sections." Innovation Ventures, LLC v. Ultimate One Distrib. Corp., 176 F. Supp. 3d 137, 155 (E.D.N.Y. 2016) (quoting Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378

---

[2] 15 U.S.C. § 1114(1)(a) provides that a person shall be civilly liable if, without the registrant's consent, such person:
uses[s] in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .
[3] 15 U.S.C. § 1125(a)(1)(A) provides that a person shall be civilly liable for false designation of origin if such person:
on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion . . . .

F. Supp. 2d 448, 454 (S.D.N.Y. 2005)); see Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 390 (2d Cir. 1995). "The elements of a federal trademark-infringement claim and a New York unfair competition claim are almost indistinguishable, except that New York requires an additional element of bad faith." Louis Vuitton Malletier, S.A. v. Hyundai Motor Am., 10 cv 1611 (PKC), 2012 WL 1022247, at *20 (S.D.N.Y. Mar. 22, 2012) (internal quotation marks omitted); see Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 149 (2d Cir. 1997) ("[Plaintiff's] state law claim of unfair competition is not viable without a showing of bad faith.").

The sale of counterfeit goods is sufficient use to establish liability. See El Greco Leather Prods. Co. v. Shoe World, Inc., 806 F.2d 392, 396 (2d Cir. 1986). Use of a trademark in commerce may also be satisfied "where the infringing act had an adverse effect on the plaintiff's ability to participate in interstate commerce," such as promotion of products using plaintiff's marks "on [a] website." C=Holdings B.V. v. Asiarim Corp., 992 F. Supp. 2d 223, 240 (S.D.N.Y. 2013). In addition, "a corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active conscious force behind [the defendant corporation's] infringement." Cartier v. Aaron Faber, Inc., 512 F. Supp. 2d 165, 170 (S.D.N.Y. 2007) (alteration in original); see KatiRoll Co. v. Kati Junction, Inc., 33 F. Supp. 3d 359, 367 (S.D.N.Y. 2014) ("It is well-established in the Second Circuit that under the Lanham Act, a corporate officer may be held personally liable . . . if the officer is a moving, active, conscious force" behind infringement.) (internal quotation marks and alterations omitted). "[I]t is immaterial . . . whether [the individual] knows that his acts will result in an infringement." KatiRoll Co., 33 F. Supp. 3d at 367. "Demonstrating that the corporation's officer authorized and approved the acts of unfair competition which are the basis of the corporation's liability is sufficient to subject the officer to personal liability." Guthrie Healthcare Sys. v. ContextMedia,

Inc., 12 cv 7992 (KBF), 2014 WL 185222, at *13 (S.D.N.Y. Jan. 16, 2014) (internal quotation marks omitted); see Chloe v. Queen Bee of Beverly Hills, LLC, 06 cv 3140, 2011 WL 3678802, at *4 (S.D.N.Y. Aug. 19, 2011) (stating a corporate officer is considered a moving, active and conscious force when the officer is "a direct participant in the infringing activity").

Mr. Torres contends, in so many words, that he cannot be liable for trademark infringement or unfair competition because he did not personally or in a corporate capacity "use" the mark in commerce. See, e.g., Def.'s 56.1 Resp. ¶16; Doc 83 ("Mr. Torres was not involved in importing, advertising, offering for sale, or selling counterfeit goods bearing the Chanel Marks. Mr. Torres did not copy Chanel's trademark, label, size, color scheme, printing or design."). He has stated, under penalty of perjury, that he "was not involved in importing, advertising, offering for sale, or selling counterfeit goods bearing the Chanel Marks in person or through any website(s)," and that he "was not involved in any alleged sales of counterfeit Chanel products, and ha[s] never received any payment in connection to any of these alleged transactions." (Def.'s Opp. Decl. ¶¶3, 6; Doc 82.)

It is undisputed that Mr. Torres was a 50% co-owner of Full Service. (Pl.'s Reply to Opp. Decl. at 6; Doc 84, Def.'s Opp. Decl. ¶2; Doc 82.) There is also no reasonable dispute that Full Service, Mr. Torres' co-owned company, was involved in the sale of counterfeit Chanel merchandise, and has been found liable for trademark infringement in a default judgment. (Default J.; Doc 87.)

Genuine issues of material fact preclude summary judgment on plaintiff's federal trademark infringement and state unfair competition law claims against Mr. Torres, either as an individual or as a corporate officer. Chanel alleges that Mr. Torres committed several acts either individually or in his corporate role to authorize or approve trademark infringement and unfair

competition. For example, Chanel alleges that several websites and social media pages registered or controlled by Mr. Torres sold and promoted counterfeit Chanel goods. (Pls.' Reply to Opp. Decl. at 6; Doc 84.) Two websites, chanelgraffitibackpack.com and buychanelgraffitibackpack.com, were registered by Mr. Torres' co-defendant, Ms. Richardson, on behalf of Full Service. (Declaration of Stephen M. Gaffigan ("Gaffigan Decl.") dated August 23, 2018 Ex. 1 pp. 11-16; Doc 64.) Two additional websites, chanelboybags.com and chanelgraffitibackpack.co.uk, were registered by an individual named Carolina or Caroline Robinson, and their registrations list addresses for Ms. Robinson that are close to an undisputed listed address of both Mr. Torres and Ms. Richardson. Compare id. Ex. 1 pp. 17-20 (identifying addresses for Ms. Robinson at 6022 and 6026 Flushing Ave.), with Pl.'s 56.1 ¶48; Doc 65, Def.'s. 56.1 Resp. ¶48; Doc 83 (identifying 6024 Flushing Ave. as an address used by Mr. Torres and Ms. Richardson).[4] Given that Mr. Torres's name is not listed on either registration, and there is no evidence that he, as opposed to others in the co-owned company, registered the sites on behalf of Full Service, a genuine issue of material fact exists with respect to who registered or operated these domain names. See Cartier, 512 F. Supp. 2d at 170 (denying summary judgment for individual liability of trademark infringement where defendant was a 50% owner of a corporation and stated that his co-owner committed infringing activities without his approval); see also Church & Dwight Co. v. Kaloti Enters. of Mich., L.L.C., 697 F. Supp. 2d 287, 302–03 (E.D.N.Y. 2009), vacated in part on other grounds, 07 cv 0612 (BMC), 2011 WL 4529605 (E.D.N.Y. Sept. 28, 2011) (denying summary judgment for claim of infringement as to 50% co-owner where there was no evidence to suggest co-owner played an active role in the particular infringing transaction while otherwise involved in the business's operations).

---

[4] Ms. Robinson is an alias of Ms. Richardson. (See Consent Final J. and Permanent Inj. at 1; Doc 89.)

It is undisputed that a fifth domain name, chanelgraffiti.com, was registered by Mr. Torres (Pl.'s 56.1 ¶51; Doc 65, Def.'s 56.1 Resp. ¶51; Doc 83). Although Mr. Torres admits to registering the domain name, he claims it was done at the request of Ms. Richardson, and that he otherwise had no control over the functioning and oversight of the website's sales or contents. (Def.'s Opp. Decl. ¶5; Doc 82).[5] Chanel has offered no evidence beyond the registration to demonstrate authorization or approval of the sale or promotion of goods bearing the allegedly infringing Chanel marks on the website by Mr. Torres. A wallet purchased from chanelgraffiti.com by one of Chanel's investigators listed Full Service as the organization receiving payment, and the package contained a return label from Kristin Richardson at 6024 Flushing Ave., Maspeth, NY. (Declaration of Eric Rosaler ("Rosaler Decl.") Ex. 1 pp. 21-24; Doc 63). These facts demonstrate an issue of material fact with respect to Mr. Torres's involvement in the use of the Chanel mark in commerce on chanelgraffiti.com. Cartier, 512 F. Supp. 2d at 170; see Johnson & Johnson Consumer Cos. v. Aini, 540 F. Supp. 2d 374, 394 (E.D.N.Y. 2008) (denying summary judgment where a buyer for a company found to infringe "did act in some capacity on behalf of [the company]," but buyer's "precise role in purchasing and selling . . . and whether has was a 'moving, active conscious force' behind any infringement . . . remain[ed] a question of fact").

Chanel alleges that counterfeit goods were shipped to its investigators from Mr. Torres's home address of 6024 Flushing Ave., Maspeth, NY. (Pl.'s Reply to Opp. Decl. at 5 (citing Rosaler Decl. ¶4); Doc 84.) But it is undisputed that this address was shared by Mr. Torres and his co-defendant Ms. Richardson, (Pl.'s 56.1 ¶48; Doc 65, Def.'s 56.1 Resp. ¶48; Doc 83,

---

[5] Mr. Torres claims that when he became aware of a cease and desist letter sent by plaintiffs, he immediately canceled the domain name chanelgraffiti.com. (Def.'s Opp. Decl. ¶11; Doc 82.) He submits a screengrab of an email account showing an email from "Ricky" to info@doortrak.com forwarding an email from GoDaddy to ricky@digitalmarketspace.net showing receipt of cancellation of the domain name on April 19, 2015. (Id. p. 4.)

Rosaler Decl. Ex. 6; Doc 63), and Mr. Torres denies that he knew of any counterfeit merchandise shipped from his address (Def.'s Opp. Decl. ¶3; Doc 82.)

Chanel next alleges that Mr. Torres authorized or approved unlawful acts of infringement because invoices generated from Chanel's investigator's purchases of counterfeit Chanel goods identified the issuer as "Wholesale Printing NYC" at 156 Beach 60th Street, along with the domain name wholesaleprintingnyc.com, and the email address thestr8life@aol.com. (Pls.' Reply to Opp. Decl. at 5–6 (citing Rosaler Decl. ¶6 & Ex. 3 pp. 21–23); Doc 84.) Again, it is undisputed that the 156 Beach 60th Street address is a corporate address at which other employees, namely Ms. Richardson, do business. (Pl.'s 56.1 ¶48; Doc 65, Def.'s 56.1 Resp. ¶48; Doc 83, Rosaler Decl. Ex. 6; Doc 63.) Chanel produces no evidence to tie Mr. Torres to the email address thestr8life@aol.com. Mr. Torres has stated, under penalty of perjury, that he "do[es] not have any connection or access to the email address 'thestr8life@aol.com.'" (Def.'s Opp. Decl. ¶7; Doc 82.) On every piece of evidence offered where this email address is tied to an individual's name, thstr8life@aol.com is connected with co-defendant Kristin Richardson. (See, e.g., Declaration of Marianne Webster dated August 21, 2018 Ex. 1 p. 26; Doc 62, Gaffigan Decl. Ex. 1 p. 13; Doc 64.) Further, there is no evidence that Mr. Torres is sole owner of the company Wholesale Printing NYC or that he is an active and conscious force behind that corporation's allegedly infringing acts. While Mr. Torres registered the website wholesaleprintingnyc.com on behalf of Full Service, (Gaffigan Decl. Ex. 1 p. 3; Doc 64; Def.'s 56.1 Resp. ¶50; Doc 83), as discussed above, registration alone does not rise to the level of authorization or approval. Chanel has not submitted evidence from the New York State Division of Corporations identifying the company's corporate officers or listed business address, and a search of the New York State records does not reveal any company by that name registered at 156 Beach 60th Street. See

https://www.dos.ny.gov/corps/bus_entity_search.html (last accessed Nov. 20, 2018). Chanel submitted a Google maps screengrab from August 2016 of 156 Beach 60th Street, at which there is only a sign for the company Full Service. (Gaffigan Decl. Ex. 1 p. 25; Doc 64.)

Chanel also submitted screengrabs of "wholesale printing nyc"'s Facebook and Instagram pages that contain photos of an allegedly counterfeit Chanel bag. Chanel's evidence is insufficient to show the absence of a genuine issue of material fact as to Mr. Torres's involvement with these companies. The Wholesale Printing NYC Facebook page does not identify Mr. Torres. One screengrab from March 2015 contains an unrelated address for the business (50 Mother Gaston Blvd., Brooklyn, NY) (id. Ex. 2 p. 12), one from April 2015 contains an address shared by Mr. Torres and Ms. Richardson (id. Ex. 2 p. 28), and a third screengrab from June 2016 contains no address (id. Ex. 2 pp. 55-57). The Wholesale Printing NYC Instagram account has in its descriptor the name "Ricky Torres," and has one picture displaying a custom made shirt with what appears to be a Chanel-marked bag in the frame. (e.g., id. Ex. 2 pp. 15-16). Mr. Torres's name on the Instagram account titled Wholesale Printing NYC, while suggestive, does not sufficiently remove issues of material fact with respect to whether or not Mr. Torres was a moving and conscious force behind Wholesale Printing NYC or Full Service's allegedly infringing acts. There is simply not enough evidence from which to conclude that Chanel has met its burden on summary judgment. E.g., Victorinox AG v. B&F Sys., Inc., 709 F. App'x 44, 50 n.6 (2d Cir. 2017), as amended (Oct. 4, 2017) (affirming summary judgment on corporate officer liability where individual "determine[d] whether to extend marks to different product lines," "review[ed] product designs developed by [the company]," and "continued sale of the [infringing products] after U.S. Customs' seizure"); Chloe, 2011 WL 3678802, at *5 (granting summary judgment where corporate officer's primary role was to "meet with his source . . . and ascertain which types of

designer handbags were available and for what prices," "contact [another employee] to decide which bags to purchase," "purchase" the bags, "ship them to [the other employee] for her to sell through [the company] and they would split any profits"); Bambu Sales, Inc. v. Sultana Crackers, Inc., 693 F. Supp. 899, 914 (E.D.N.Y. 1988) (granting summary judgment where corporate officers testified that they "ma[d]e the decisions" for the company, "purchased the counterfeit" goods, "specifically instructed [a] buyer concerning the purchase and subsequent resale of the infringing merchandise, approved these transactions and personally examined the goods").

Finally, Chanel points to access of the email addresses fullserviceink@yahoo.com and wholesaleprintingnyc@gmail.com as evidence of use of the infringing mark. (Pl.'s Reply to Opp. Mem. at 8; Doc 84.) Chanel sent cease and desist letters to these email addresses, but does not otherwise claim they appear on any receipts from the sale of counterfeit merchandise or other communication with individuals in connection with the use of Chanel's marks. (Pl.'s 56.1 ¶¶22, 24; Doc 65.) The email address fullserviceink@yahoo.com is also listed on the registration papers for the websites wholesaleprintingnyc.com and chanelgraffiti.com. (Gaffigan Decl. Ex. 1 pp. 3, 8; Doc 64.) It is not clear that access to or use of either email address would be sufficient to demonstrate infringement, or authorization or approval of infringement. In any event, Chanel has no evidence that Mr. Torres, as opposed to other employees at either Full Service or Wholesale Printing NYC, accessed the email addresses at any of the relevant times cited by Chanel. (See, e.g., id. Ex. 3; Doc 64 (showing general read receipts from wholesaleprintingnyc@gmail.com); Declaration of Stephan M. Gaffigan dated Oct. 16, 2018 Ex. 2; Doc 85 (showing general read

receipts from fullserviceink@yahoo.com)).[6] Accordingly, the Court denies summary judgment on Chanel's claims for trademark infringement, false designation of origin, and unfair competition.

II. Cybersquatting Pursuant to 15 U.S.C. § 1125(d)

The Anti-Cybersquatting Consumer Protection Act ("ACPA") was passed "to protect consumers and American businesses, to promote the growth of online commerce, and to provide clarity in the law for trademark owners by prohibiting the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks . . . ." S. Rep. No. 106-140, at 4 (1999). The act imposes civil liability on, inter alia, any person who, "without regard to the goods or services of the parties":

(i) has a bad faith intent to profit from that mark . . . ; and

(ii) registers, traffics in, or uses a domain name that—

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark . . . .

15 U.S.C. § 1125(d)(1)(A). To prevail on a claim for cybersquatting, a plaintiff must demonstrate (1) "its marks were distinctive at the time the domain name was registered"; (2) "the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark"; and (3) "the infringer has a bad faith intent to profit from that mark." Webadviso v. Bank of Am. Corp., 448 F. App'x 95, 97 (2d Cir. 2011).

Chanel argues that Mr. Torres violated ACPA by registering five domain names – chanelgraffiti.com, chanelgraffitibackpack.com, buychanelgraffitibackpack.com,

---

[6] Mr. Torres stated in an affidavit submitted on September 24, 2018, that in his belief the email address fullserviceink@yahoo.com was "not accessible as the password was lost prior to April 6, 2015, and Yahoo locked the account." (Def.'s Opp. Decl. ¶10; Doc 82.) He further stated in the affidavit that "[t]he email address 'wholesaleprintingnyc@gmail.com['] was accessible to other employees at Full Service Ink, LLC." (Def.'s Opp. Decl. ¶11; Doc 82.)

chanelboybags.com, and chanelgraffitibackpack.co.uk. (Mem. of Law in Support of Mot. for Summ. J. dated Aug. 24, 2018 at 23; Doc 59.) As discussed above, Mr. Torres admits to registering one of the five websites, chanelgraffiti.com. (Def.'s Opp. Decl. ¶5; Doc 82.) There remain genuine issues of material fact as to whether Mr. Torres registered the other four domain names. See supra Section I. The Court will review plaintiff's ACPA claim with regard to chanelgraffiti.com.

Viewing all facts in a light most favorable to defendant, the Court holds that there is no genuine issue of material fact on the ACPA claim, and plaintiff is entitled to summary judgment in its favor on this claim. Mr. Torres does not contest that Chanel's mark was distinctive at the time the domain name was registered. Chanel has put forth evidence that its nine relevant trademarks are registered on the principal register and have been so since, at the latest, November 13, 2012. (Declaration of Adrienne Hahn dated August 22, 2018 ¶4; Doc 61; see Pl.'s 56.1 ¶14; Doc 65, Def.s 56.1 Resp. ¶14; Doc 83.) "Registered trademarks are presumed to be distinctive . . . ." Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 871 (2d Cir. 1986); see Kelly-Brown v. Winfrey, 659 F. App'x 55, 59 (2d Cir. 2016), cert. denied, 137 S. Ct. 1098 (2017) (discussing the presumption).

The registered domain name chanelgraffiti.com is confusingly similar to the plaintiff's mark. Webadviso, 448 F. App'x at 97. "In the cybersquatting context, 'confusingly similar' must simply mean that the plaintiff's mark and the defendant's domain name are so similar in sight, sound, or meaning that they could be confused." 5 McCarthy on Trademarks § 25:78 (4th ed. 2002); see McAllister Olivarius v. Mermel, 298 F. Supp. 3d 661, 670 (S.D.N.Y. 2018) (similar). This inquiry is important "given that the overarching concern of the individual searching the Internet is to arrive at the correct website, which is ultimately identified by a purely text-based

website address." Savin Corp., 391 F.3d at 458. Mr. Torres offers no admissible evidence to suggest that chanelgraffiti.com is not confusingly similar to the mark Chanel. Courts have found that, even where "domain names incorporate additional phrases or words alongside" a mark, "they [may be] sufficiently similar to confuse consumers as to whether the [i]nfringing [w]ebsites are affiliated with" the mark. Diesel S.P.A. v. Does, 14 cv 4592 (KMW), 2016 WL 96171, at *7 (S.D.N.Y. Jan. 8, 2016); see id. (finding websites such as "the dieseljeanusa.com"; "dieseljeansboutique.com"; "dieseljeansmen.net"; and "theclassicdieseljeans.com" similar to the mark Diesel); Volvo Trademark Holding AB v. Volvospares.com, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) (finding volvospares.com confusingly similar to VOLVO); Louis Vuitton Malletier & Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 578 (E.D. Pa. 2002) (finding louisvuitton-replicas.com confusingly similar to Louis Vuitton). For example, a court in this District has found similarities between barbiesbeachwear.com and barbiesclothing.com to the mark BARBIE "apparent on their face." Mattel, Inc. v. Adventure Apparel, 00 cv 4085(RWS), 2001 WL 1035140, at *2 (S.D.N.Y. Sept. 7, 2001).

No reasonable fact finder could find that chanelgraffiti.com is not confusingly similar to the Chanel mark. The similarities are "instantly apparent because of the inclusion of the word" Chanel in the domain name, and Mr. Torres does not claim the term "chanel" is meant to reference anything other than the luxury brand. Web-adviso v. Trump, 927 F. Supp. 2d 32, 41 (E.D.N.Y. 2013). The inclusion of the term "graffiti" does not change its confusingly similar nature. Moreover, the term "graffiti" does not self-evidently connote a type of criticism or disregard for the brand that rises to a meaningful level of distinction. See, e.g., McAllister Olivarius, 298 F. Supp. 3d at 671 (collecting cases in which the apparently critical nature of domain name distinguished it from distinctive marks).

There is no reasonable dispute that Mr. Torres had a bad faith intent to profit from the mark. In assessing bad faith under ACPA,[7] the statute provides nine non-exclusive factors to consider, see 15 U.S.C. § 1125(d)(1)(B)(i),[8] "[b]ut [courts] are not limited to considering just the listed factors when making [a] determination of whether the statutory criterion has been met," Sporty's Farm, 202 F.3d at 498. It is undisputed that Mr. Torres did not have any intellectual property rights in the Chanel mark. (Def.'s 56.1 Resp. ¶15; Doc 83.) The domain name chanelgraffiti.com does not consist of the legal name or any name commonly used to identify Mr. Torres or his company Full Service, and there is no evidence that prior use of the website was for the bona fide offering of any goods or services associated with any registered business of Mr. Torres. The statute's bad-faith safe harbor provision immunizes defendants who "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise

---

[7] Bad faith is a term of art in the ACPA and "should not necessarily be equated with 'bad faith' in other contexts." Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc., 202 F.3d 489, 499 n.13 (2d Cir. 2000).

[8] These factors are:
- (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
- (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
- (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
- (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
- (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
- (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
- (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
- (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
- (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) or section 43.

lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). Mr. Torres does not argue that he believed his use of the Chanel trademark was fair use, or that he had any other lawful right to use the mark. See Webadviso, 448 F. App'x at 98 n.2. And as discussed above, see supra, the Chanel mark is distinctive. Lois Sportswear, 799 F.2d at 871.

> As the Second Circuit has stated,
>
> > bad faith may be inferred from "the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site."

Webadviso, 448 F. App'x at 98 (quoting 15 U.S.C. § 1125(d)(1)(B)(i)(V)). Conclusory denials that a defendant is not a cybersquatter are insufficient to defeat summary judgment on a claim of a violation of ACPA. See Webadviso v. Bank of Am. Corp., 09 cv 5769 (DC), 2010 WL 521117, at *3 (S.D.N.Y. Feb. 16, 2010), aff'd, 448 F. App'x 95 (2d Cir. 2011). Chanelgraffiti.com unquestionably advertised products containing the Chanel mark and had product descriptions that read "chanel inspired graffiti bags." (Gaffigan Decl. Ex. 2 p. 7; Doc 64, Rosaler Decl. Ex. 1 pp. 9, 14; Doc 63.) Mr. Torres disputes that he had any control over the content of the site, stating that he "did not operate any of the Subject Domain Names," "did not operate 'chanelgraffiti.com'" and "had no connection to the Domain Name outside of registering it." (Def.'s Opp. Decl. ¶5; Doc 82.) Whether and to what extent the site was used or operated by Mr. Torres, however, is beside the point under ACPA. Mr. Torres does not dispute that his registration of chanelgraffiti.com, regardless of the content of the site, would divert customers from the markholder's website by creating a likelihood of confusion as to the affiliation of the site chanelgraffiti.com, which is a "quintessential example of bad faith within the meaning of ACPA." Alpha Recycling, Inc. v. Crosby, 14 cv 5015 (JPO), 2016 WL 1178774, at *6 (S.D.N.Y. Mar. 23, 2016) (internal quotation

marks omitted); see Gioconda Law Grp. PLLC v. Kenzie, 941 F. Supp. 2d 424, 437 (S.D.N.Y. 2013) (stating a "core ACPA scenario[]" is one in which "a defendant . . . diverts customers from the markholder's website to the defendant's own website") (internal quotation marks omitted). Mr. Torres knew that Chanel owned a trade mark on the term "Chanel," (Pl.'s 56.1 ¶3; Doc 65, Def.'s 56.1 Resp. ¶3; Doc 83), and has offered no reasons to explain any alleged legitimate motives for registering the site using the name "Chanel," see Gioconda Law Grp., 941 F. Supp. 2d at 437 (discussing defendant's alleged legitimate motives that could weigh in defendant's favor and cases involving such motives).

Certain factors are neutral or inconclusive from the present record, such as registration of multiple domain names, providing misleading false contact information in registering domain names, and attempting to transfer, sell, or otherwise assign the domain name to Chanel or a third party. But see Prime Publishers, Inc. v. Am.-Republican, Inc., 160 F. Supp. 2d 266, 281 (D. Conn. 2001) ("Although the statutory factor refers to the registration of 'multiple' domain names, [the Court] find[s] that the registration of a single domain name with the knowledge that it incorporates a competitor's mark similarly informs an inference of bad faith intent."). Nevertheless, the record taken as a whole demonstrates no dispute of material fact over the issue of bad faith. Jaramillo, 536 F.3d at 145. Even affording Mr. Torres the special solicitude required for pro se individuals, he has not made the required showing to defeat summary judgment on the ACPA claim. See Anderson, 477 U.S. at 250 ("If [the non-moving party's] evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted.").

CONCLUSION

Chanel's motion for summary judgment is GRANTED on its claim for a violation of ACPA and otherwise DENIED. Within twenty-one days, plaintiff shall advise the Court whether

it wishes to have judgment entered with regard to the single claim and have the Court adjudicate damages, in which case plaintiff shall enter a submission on proposed damages and drop its other claims, or await final judgment on all claims. Because the grounds for a Rule 54(b), Fed. R. Civ. P. partial judgment have not been met, the Court will not enter partial judgment. The Clerk is requested to terminate the motion (Doc 58.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
November 20, 2018